IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNIVERSAL PROCESSING LLC, | : | |
| | : | |
| Plaintiff, | : | Case No. 17-CV-10210 |
| | : | |
| v. | : | |
| | : | |
| WEILE ZHUANG a/k/a VERA ZHUANG, & | : | |
| ARGUS MERCHANT SERVICES LLC, a New | : | |
| York Corporation, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

UNIVERSAL PROCESSING LLC, ("UNIVERSAL"), by its attorneys BRINEN & ASSOCIATES, hereby files its Complaint seeking injunctive relief and damages against the DEFENDANTS WEILE ZHUANG a/k/a VERA ZHUANG ("ZHUANG") and ARGUS MERCHANT SERVICES LLC ("ARGUS") collectively "the Defendants" and for its complaint alleges as follows:

**NATURE OF THE ACTION**

1.  Universal, an established business specializing in credit card processing services, brings this claim against Zhuang, a former employee of the Universal and against Argus, a direct competitor, the Defendants, for the misappropriation of Universal's trade secrets, for conversion, for the intentional interference with contractual relationships, for breach of contract, for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, defamation and for declaratory relief enjoining the Defendants from profiting from Universal's trade secrets.

## PARTIES

2.      UNIVERSAL is a limited liability company incorporated in the State of New York with its principal place of business at 60 West 38th Street, FL 2, New York, NY 10018.

3.      On information and belief, Zhuang is an individual and resides in the State of New Jersey at an address of 110 1st Street, Apt. 18B, Jersey City, NJ 07302.

4.      On information and belief, Argus is a corporation incorporated in the State of New York with its principal place of business at 40 Exchange Place, Suite 1607, New York, NY 10005.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C §1331(a), federal subject matter jurisdiction exists because Universal is pursuing a remedy for a breach of its federal right to trade secret protection pursuant to 18 U.S.C. § 1836, Defend the Trade Secrets Act, 2016.

6.      Pursuant to 28 U.S.C. § 1367(a) this Court has supplemental jurisdiction over the state law claims articulated herein, pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper under 28 U.S.C. §1391(a) since a substantial part of the events giving rise to the claims asserted herein occurred within the territorial jurisdiction of this court.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.      On or about July 20, 2017, Zhuang commenced employment with Universal.

9.      Zhuang at all material times was an employee of Universal, and signed a Memorandum of employment on July 25, 2017, a copy of which is annexed hereto as Exhibit 1.

10.      Zhuang signed a Confidentiality and Non-disclosure agreement on July 19, 2017, a copy of which is annexed hereto as Exhibit 2.  Both documents are collectively referred to as the

"Agreements".

11.    Pursuant to the express terms of the Agreements, Zhuang signed confidentiality and non-disclosure clauses as an employee of Universal.

12.    Under the confidentiality and non-disclosure clauses Zhuang agreed to protect the company property of Universal and to not disclose any confidential information of Universal to any third party.

13.    Confidential information includes trade secrets, methodologies, potential products, processes, customers, marketing materials, strategic plans, ideas, research data, business relationships, pricing information, and financial information.

14.    Under the terms of the Agreements with Universal, Zhuang was hired as a Marketing Associate.

15.    In accordance with her level of responsibility within Universal, Zhuang had access to the following forms of confidential information: marketing information, financial information, client lists, business models, pricing formulas, customer data and social media sites, and applications with specific Universal usernames and passwords.

16.    Zhuang was responsible for assembling and managing a marketing team of fifteen (15) people.

17.    Zhuang was also responsible for advising on marketing issues, price markets, and price optimization.

18.    At all material times, Zhuang was to report directly to Universal Managing Member Steven Ding ("Ding").

19.    Over a period of time professional differences developed between Zhuang and Ding.

20.    These professional differences centered on differences in work product expectations and which pricing structure Universal should apply to its marketing strategy.

21.    On October 3, 2017, Zhuang complained of these differences to the Universal Human Resource Department.

22.    On November 3, 2017, Universal's Chief Executive Officer, Saint Hung, ("Hung") arranged a meeting with Zhuang to assist in mediating between Zhuang and Ding in a concerted effort to settle their differences.

23.    During the meeting, Hung offered Zhuang a future equity interest in a marketing spin-off from Universal.

24.    Zhuang stated that she was applying for alternative positions in the market place but did not disclose the nature of these prospective positions or the identity of the companies.

25.    Hung asked Zhuang to consider Universal's offer over the weekend and stated that they would speak again on Monday, November 6, 2017, in an effort to resolve matters.

26.    On or about Thursday, November 2, 2017, and prior to Zhuang's conversation with Hung, Zhuang engaged in business discussions with officers of Argus at their offices.

27.    On or about November 6, 2017, Zhuang announced her formal resignation; Zhuang then took a new position at Argus.

28.    Between November 3rd and November 6th, Zhuang began forwarding all work electronic mail messages to her personal electronic mail account.

29.    These electronic mail messages contained Universal's trade secret information, namely the detailed Marketing Program financial model

30.    This information is the guideline and core of Universal's "micro-marketing" and "advanced marketing" initiatives.

31.     These models and initiatives are intended for company use only.

32.     These files were not encrypted because the recipients of the original email were authorized company email addresses.

33.     Immediately afterwards, Zhuang deleted the forwarded work electronic mail messages from the outbox section of her Universal electronic mail account.

34.     Zhuang retained this trade secret information of Universal in her personal electronic mail account for storage and transfer from Universal while Zhuang secured a future position with Argus.

35.     On or about November 4, 2017, Managing Member Ding informed Hung of Zhuang's actions.

36.     As Universal's Marketing specialist and the most senior dedicated marketing employee in a newly established project, Zhuang had unlimited access to the information she required to utilize and refine the marketing models and plans she needed for the performance of her daily duties.

37.     Zhuang's transfer and storage of this information was an abuse of her access to the confidential materials she was required to utilize in her daily employment.

38.     On November 6, 2017, Human Resources manager, Serene Liao ("Liao"), walked Zhuang through the employment agreement and Non-compete Agreement before Zhuang left the office.   Zhuang acknowledged in writing her understanding of her obligations under each agreement.  See Exhibit 3.

39.     Zhuang's email access and system accesses were suspended on the same day.

40.     While Zhuang was still a Universal employee, Universal was not able to prevent Zhuang from forwarding emails.

41.     Universal placed Google Vault on her account to prevent her from deleting electronic mail messages and documents and to retain previously deleted electronic mail messages.

43.     Following the announcement of her formal resignation from Universal, Zhuang approached a number of agents and or employees of Universal.  Specifically, Zhuang approached Sanjun Chen ("Chen") on November 6, 2017, and Yuchan Zhai ("Zhai") on November 9, 2017.

44.     Zhuang informed Chen and Zhai of her move to Argus and urged them to join her in quitting Universal and moving to Argus.

45.     Zhuang represented to these agents and/or employees of Universal that Argus would offer them enhanced career opportunities.

46.     Subsequent to these approaches, Zhuang, using the domain name, vera@argusinvision.com, posted an advertisement for qualified applicants fluent in Chinese and English to apply for the position of a full-time market development consultant.

47.     The post detailed the job description and company benefits, including the availability of visa sponsorship to be paid by Argus.

48.     The type of position, qualifications of candidates, languages preferred and company benefits mirrored those provided by Universal to its international agents and/or employees.

49.     On or about November 6, 2017, Zhuang met with Universal's Human Resource representative, Liao.

50.     Liao reminded Zhuang of the employment agreement she had signed with Universal, specifically its confidentiality and non-disclosure clauses.

51.     Zhuang was instructed to keep Universal's business information confidential at all times following her resignation.

52.     Zhuang agreed in writing to abide by the confidentiality and non-disclosure clauses, as well as all express terms of the Agreements with Universal.  See Exhibit 3.

53.     Notwithstanding her having agreed in writing to abide by the confidentiality and non-disclosure clauses set forth in the Agreements with Universal, Zhuang informed Liao that the confidential Universal business models she had created and refined during the term of her employment were not done as works for hire.

54.     Zhuang represented to Liao that she (Zhuang) was, in essence, a product and/or service of Universal.

55.     Upon her resignation, Zhuang's login and access to all confidential, work sensitive applications was revoked, with the exception of the CS Platform and the WeChat client support account of which Zhuang had administrator access.

56.     CS Platform and WeChat are platforms that Universal employs to communicate with existing processing clients and that existing processing clients use to contact Universal Processing for help.

57.     Clients employ CS Platform and WeChat to send Universal confidential information about their bank accounts, merchant accounts, funding, card numbers and transactions.

58.     Universal employs CS Platform and the WeChat to exchange confidential company information with existing processing clients.

59.     CS Platform and WeChat support nearly one thousand (1,000) existing processing clients.

60.     The WeChat platform is company property that was created by Universal a few years before Zhuang joined Universal.

61.     Zhuang has held the account administrator credentials since she transitioned in as a Marketing specialist, and has refused to release those credentials since her departure.

62.     The CS Platform provides access to approximately five hundred to one thousand (500 -1000) merchants who regularly do business with Universal.

63.     Over a six (6) week period, Universal members have made concerted efforts to engage with Zhuang and to request that she relinquish her access to these sources of Universal confidential company information.

64.     Bufan Yang ("Yang") and Siyuan Guo ("Guo") tried multiple times to work with Zhuang on the transfer of the administrator credentials.

65.     None of the attempts were successful.

66.     Yang made the first attempt to regain the administrator privileges on November 6, 2017.

67.     Yang's WeChat needed to be associated with a bankcard to receive the transfer.

68.     After the bankcard was added, Zhuang said both parties needed to be present at the same computer. Both parties were not present at the same computer; therefore, the transfer was stopped.

69.     On November 22, 2017, Guo made the second attempt to regain the administrator privileges.

70.     Guo traveled from Universal to the neighborhood where Argus was located.

71.     Zhuang informed Guo that in order to transfer the administrator privileges, the programs required a working Chinese cell phone to receive the verification code.

72.     Guo was not able to provide access to a working Chinese cell phone, so the transfer was voided.

73.     On November 27, 2017, Guo found a working Chinese cell phone and reached out to Zhuang.

74.     Guo, in a last attempt to transfer the administrator privileges, traveled to Zhuang's location to meet with her.

75.     Zhuang refused to cooperate with Guo. She stated that if Universal wanted Zhuang to transfer the administrator privileges, then Universal, through its Chief Executive Officer, had to meet her demands.

76.     Zhuang has on every occasion made excuses and created obstacles to prevent her effecting a transfer of her administrator access to another Universal employee.

77.     Zhuang has at no time since her resignation made any effort to return these items of company property and confidential information to Universal.

78.     On or about November 28, 2017, Zhuang continued to use Universal's WeChat platform.

79.     On November 28, 2017, Zhuang in her capacity as an employee of Argus, made direct contact with Universal employee, Yuchen Lin ("Lin").

80.     Zhuang represented to Lin that Argus provided better compensation and increased commission on sales for their staff, and permitted employees to sell both merchant services and marketing programs.

81.     Zhuang encouraged Lin to terminate her contract of employment with Universal and accept employment at Argus.

81.     On or about November 25, 2017, Zhuang published a review of her experience while employed by Universal on the website Glassdoor.  See Exhibit 4.

82.     Zhuang identified both Hung and Ding in her post.

83.     Zhuang stated that on the day she resigned from Universal she was instructed to surrender her personal belongings for examination before she was allowed to leave the premises.

84.     Zhuang stated that on the day she resigned from Universal Hung threatened her and attempted to force her to give him her cell phone.

85.     Zhuang stated that Universal is a company that exploits its employees.

86.     Zhuang stated that Universal has a culture of depriving its employees of any credit for the sales they make.

87.     Since Zhuang commenced employment with Argus, Argus has mounted a targeted and concerted effort to usurp trade and business relationships cultivated by Universal.

88.     Argus induced longstanding Universal merchants to cease doing business with Universal and to commence doing business with Argus.

89.     On or about November 15, 2017, a merchant was fraudulently, willfully and deliberately poached from Universal to Argus by Argus employee James Liu ("Liu").

90.     The merchant in question was L & G Nail Salon.

91.     L & G Nail Salon was a new customer to Universal.

92.     Liu surreptitiously took the Universal terminal with him and supplied L & G Nail Salon with an Argus terminal.

93.      Liu did not inform the merchant of the switch.

94.     L & G Nail Salon was upset after realizing what Liu had done.

95.     L & G Nail asked Universal to provide a second terminal.

96.     Argus is still in possession of Universal's terminal.

97.     Liu, at all material times, worked as an agent, employee and or affiliate of Argus.

## FIRST CAUSE OF ACTION
### (Trade Secret Misappropriation against the defendants pursuant to 18 U.S. Code § 1836)

98.     Universal repeats and realleges each of the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

99.     As a result of Zhuang's employment and position of trust with Universal, Zhuang obtained access to Universal's trade secret information, including but not limited to, information related to pricing, marketing plans, marketing models, proprietary business models, pricing calculations and methodology, technical approaches, customer lists and scopes of work, bidding strategies, and other unique customer information for legitimate business purposes only.

100.     Universal takes reasonable steps to protect the secrecy of its trade secret information discussed herein, which includes, but is not limited to, use of passwords, security time-outs and confidentiality policies and non-disclosure covenants in employment agreements.

101.     Universal reasonably expected that Zhuang would not breach her express material contractual obligations in disclosing Universal's confidential and trade secret information.

102.     Notwithstanding Universal's efforts to maintain the confidentiality of its trade secrets, upon information and belief, Zhuang on behalf of herself and as an agent of Argus, obtained confidential, proprietary, and trade secret information from Universal's computer systems and then copied such information onto thumb drives or moved it into personal Dropbox accounts while still employed with Universal, all with the intent to retain and use such information after the end of her employment with Universal in violation of Zhuang's employment agreements with Universal.

103.    Since this time the Defendants have at all material times been in possession of Universal's merchant and client contact applications; the CS Platform and WeChat client and merchant lists and contacts; marketing plans, marketing models, bidding strategies, and other unique customer information. These items constitute the trade secrets of Universal.

104.    These items are the exclusive property of Universal and were misappropriated by the Defendants in circumstances where Universal never expressly and/or implicitly consented to their acquisition.

105.    At all material times, Universal requested that the Defendants return these trade secrets.

106.    To date, no effort has been made by the Defendants to return these trade secrets to Universal and the Defendants continue to utilize these trade secrets.

107.    As a direct result of Defendants' actions, Universal has lost merchant business relationships directly to the Defendants.

108.    As a result of which loss Universal has suffered and continues to suffer damages in an amount to be proven at trial.

109.    The Defendants' actions and misrepresentations are of the kind and nature that require this Court to protect others similarly situated to Universal from the Defendants, and, as such, demonstrate the malicious acts of the Defendants such that this court should punish the Defendants with punitive damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Conversion against Zhuang)

110.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 109 as if fully set forth herein.

111.    Universal as the former employer of the Zhuang at all times possessed the superior and lawful right to the value of its trade secrets and confidential information.

112.    This superior lawful right in favor of Universal was contractually mandated by the Agreements signed between Universal and Zhuang, and under New York Law.

113.    At no material time did Zhuang either implicitly or expressly seek the consent of Universal to be in possession of the CS Platform and WeChat, client and merchant lists, bidding strategies, and other unique customer information.

114.    Universal requested that Zhuang return these trade secrets and company property of Universal.

115.    To date, no effort has been made by Zhuang to return these trade secrets and company property to Universal.

116.    Universal thereby is excluded and/or deprived and continues to be so from its superior right to these items of exclusive property of Universal.

117.    As a result of the actions of Zhuang Universal has suffered significant economic harm.

118.    By reason of the foregoing, Zhuang is liable to Universal for damages in an amount to be proven at trial.

13

## THIRD CAUSE OF ACTION
## <u>(Intentional Interference with contractual relations against the Defendants)</u>

119.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 118 as if fully set forth herein.

120.    Since the date of her employment, Zhuang owed contractual obligations to Universal including, but not limited to, those obligations set forth in the confidentiality and non-disclosure clauses of Universal's employment agreement with Zhuang.

121.    Notwithstanding these contractual obligations, Zhuang, in or around the time of her resignation, approached a number of Universal's agents and or employees.

122.    Zhuang represented to those agents and/or employees of Universal that she was resigning her employment with Universal to take up new employment with Argus.

123.    Zhuang induced and/or attempted to induce Universal's agents and/or employees to terminate their employment with Universal to accept employment with Argus.

124.    Zhuang continued and repeated this conduct with a post on a public domain using Argus's domain name as a means of directly contacting the Defendants.

125.    Zhuang was acting under the express and/or implied authority of Argus in inducing Universal's agents and/or employees to terminate their employment with Universal to accept employment with Argus.

126.    Argus as the principal of Zhuang is responsible and vicariously liable to Universal at all material times for the acts and/or omissions of Zhuang as their agent.

127.    As a result of the actions of the Defendants, Universal has suffered significant economic harm.

128.    By reason of the foregoing, the Defendants are liable to Universal for damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## (Breach of Contract against Zhuang)

129.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 128 as if fully set forth herein.

130.    Zhuang entered into a valid enforceable contract with Universal.

131.    Pursuant to the express terms of the Agreements, Zhuang agreed not to disclose Universal's trade secrets and confidential information, and not to compete with Universal  or solicit Universal's customers, employees and/or agents.

132.    Notwithstanding these contractual obligations, Zhuang willfully and intentionally misappropriated the confidential information and trade secrets of Universal without consent.

133.    Zhuang willfully and intentionally induced Universal's agents or employees to terminate their employment with the Universal to accept employment with Argus.

134.    Zhuang's actions are in direct violation of the express and/or implied terms of the Agreements with Universal.

135.    As a result of Zhuang's actions, Universal has suffered significant economic harm.

136.    By reason of the foregoing, Zhuang is liable to Universal for damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of implied covenant of good faith and fair dealing against Zhuang)

137.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 136 as if fully set forth herein.

138.    Universal and Zhuang entered into a valid contract.

139.    Zhuang had an obligation to act in the best interests of Universal in the context of contractual obligations and trade practices.

140.    Notwithstanding this obligation, Zhuang willfully and intentionally misappropriated the confidential information and trade secrets of Universal without consent.

141.    Despite repeated requests, Zhuang has refused to return Universal's confidential information and trade secrets.

142.    Zhuang willfully and intentionally induced Universal's agents and/or employees to terminate their employment with Universal to accept employment with the Defendants.

143.    As a result of Zhuang's actions, Universal has suffered significant economic harm.

144.    By reason of the foregoing, Zhuang is liable to Universal for damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Defamation against Zhuang)

145.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 144 as if fully set forth herein.

146.    Zhuang published a post on the website Glassdoor concerning Universal's business reputation.

147.    Zhuang identified Universal's corporate officers Hung and Ding in the body of this post.

148.    At all material times this post published by Zhuang was in the public domain and accessible to third parties.

149.    Zhuang in this post falsely, intentionally and willfully states as fact that Universal at all times exploits its employees and/or agents.

150.    Zhuang in this post falsely, intentionally and willfully states as fact that Universal at all times accepts ninety-nine percent of the credit and allocates only one percent of credit for any successfully completed business deals and/or projects to their employees and/or agents.

151.    Zhuang in this post falsely, intentionally and willfully states as fact that Universal prevented Zhuang from exiting its premises on the day of her resignation until a Universal employee inspected her personal effects.

152.    Zhuang in this post falsely, intentionally and willfully states as fact that Universal and specifically its agent Hung threatened Zhuang on the day of her resignation.

153.    The facts as stated and published by Zhuang in the post were at all times falsely made and damaged Universal's business reputation.

154.    As a result of the actions of Zhuang, Universal has suffered significant harm to its reputation and character of the kind to be proven at trial.

155.    By reason of the foregoing, Zhuang is liable to Universal for damages per se in an amount to be proven at trial.


### SEVENTH CAUSE OF ACTION
### (Declaratory relief against the Defendants)

156.    Universal repeats and realleges each of the allegations contained in paragraphs 1 through 155 as if fully set forth herein.

157.    Pursuant to the non-disclosure covenant of the Agreements with Universal, following Zhuang's termination of employment, she was prohibited from disclosing directly or indirectly to any third party any confidential information of Universal's which Zhuang became privy to during her period of employment with Universal.

158.    Zhuang violated the Agreements' covenant not to compete when she, *inter alia*, accepted a position with a competing business, Argus, to perform the same or similar duties she performed on behalf of Universal.

159.    Zhuang violated the Agreements' covenant of non-disclosure and confidentiality when she, *inter alia*, improperly accessed and disclosed Universal's confidential and proprietary information for the benefit of Argus.

160.    Zhuang when breaching the Agreements' covenant of non-disclosure and confidentiality was acting under the express and/or implied authority of Argus as their servant and or/agent.

161.    The non-disclosure and confidentiality clauses of the Agreements are valid and enforceable under applicable law.

162.    These clauses of the Agreements are reasonably calculated to protect Universal's legitimate business interests, which include, but are not limited to, protection of Universal's confidential information and its relationships with its customers, and goodwill with customers.

163.    Zhuang was prohibited from disclosing Universal's confidential information to any third party and thereby including Argus, its servants and/or agents.

164.    Zhuang's current work on behalf of Argus constitutes a breach of the non-disclosure and confidentiality clauses of the Agreements.

165.    As a result of Zhuang's breach, Universal has suffered and continues to suffer great and irreparable harm. In addition, or in the alternative, Universal has suffered damages in an amount to be proven at trial.

166.    Argus directly and/or indirectly induced Zhuang to breach the non-disclosure and confidentiality clauses of the Agreements to their benefit by accessing Universal's confidential and trade secret information.

167.    As a result of the Defendants' acts and/or omissions, Universal has suffered and continues to suffer great and irreparable harm. In addition, or in the alternative, Universal has suffered damages in an amount to be proven at trial.

168.    By reason of the foregoing, the Defendants are liable to Universal.

169.    Universal has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

WHEREFORE, Universal respectfully requests that the Court enter an Order against Defendants as follows:

a.    awarding Universal a preliminary and permanent injunction to enforce the non-disclosure and confidentiality clauses of Zhuang's employment agreement;

b.    awarding Universal a preliminary and permanent injunction restraining the Defendants from accessing and utilizing Universal's confidential information and trade secrets;

c.    directing the Defendants to transfer and return all of Universal's trade secrets and confidential information;

d.    awarding Universal damages in an amount to be proven at trial, together with interest;

e.    awarding Universal costs and reasonable attorneys' fees; and

f.    granting such other and further relief as the Court deems just and proper.

Dated:        December 29, 2017

Respectfully submitted,

Joshua D. Brinen
(SDNY Bar No. JB9708)
BRINEN & ASSOCIATES, LLC

90 Broad Street, Second Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorneys for Plaintiff