UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNIVERSAL PROCESSING LLC,

    Plaintiff,

  -v-                                                            No.  17 CV 10210-LTS

WEILE ZHUANG a/k/a VERA ZHUANG, &
ARGUS MERCHANT SERVICES LLC,

    Defendants.

------------------------------------------------------x

## MEMORANDUM ORDER

        Plaintiff Universal Processing LLC ("Plaintiff" or "Universal") brings this action against Weile Zhuang a/k/a Vera Zhuang ("Zhuang") and Argus Merchant Services LLC ("Argus") (collectively, "Defendants"), asserting a claim for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq., as well as state law claims for conversion, intentional interference with contractual relations, breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation.  This Court has subject matter jurisdiction of Plaintiff's federal trade secret misappropriation claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint.  The Court has considered the parties' submissions carefully and, for the following reasons, Defendants' motion to dismiss is granted.

BACKGROUND

The following allegations are taken from the Complaint and are presumed true for the purposes of this motion.

Plaintiff Universal is a credit card processing business incorporated in the State of New York, with its principal place of business in New York, New York. (Compl. ¶¶ 1-2.) Defendant Zhuang resides in New Jersey and is a former Universal employee. (Id. ¶¶ 1, 3.) Defendant Argus is also a credit card processing business incorporated in the State of New York, with its principal place of business in New York, New York. (Id. ¶¶ 1, 4.)

Zhuang began working at Universal as a Marketing Associate in July 2017. (Id. ¶ 8, Ex. 1.) Zhuang signed a Memorandum of Employment on July 25, 2017, a few days after she began working at Universal. (Id. ¶ 9, Ex. 1.) The Memorandum includes a Confidentiality provision that states:

> By signing this Memorandum you agree that you will retain in strictest confidence all information and data belonging to or relating to the business of Universal Processing including but not limited to: workflows, client information, vendor information, staff information, directories & databases, company practices[, and] any additional information that the company might deem confidential. It is hereby agreed that each party will safeguard such information and data by using the same degree of care and discretion that it uses with its own data that such party regards as confidential.

(Id., Ex. 1 at pg. 2.)

Universal alleges that, in her role as Marketing Associate, Zhuang had unlimited access to confidential information, including "marketing information, financial information, client lists, business models, pricing formulas, customer data and social media sites, and applications with specific Universal usernames and passwords." (Id. ¶ 15.) Zhuang also had login and access rights to the CS Platform and administrator access to the WeChat client support account. (Id. ¶ 55.) The CS Platform and WeChat are digital platforms that Universal employs

to exchange confidential company information with existing credit card processing clients. (Id. ¶ 58.) Universal alleges that the WeChat platform is company property created by Universal years before Zhuang joined as an employee. (Id. ¶ 60.)

Zhuang complained to the Universal Human Resources Department in October 2017 about professional differences she was experiencing with her manager, Steven Ding ("Ding"). (Id. ¶¶ 19-21.) A few days before announcing her formal resignation from Universal, Zhuang allegedly forwarded emails containing what Universal describes as "trade secret information, namely marketing financial models" and initiatives "intended for company use only," from her Universal email account to her personal email account. (Id. ¶¶ 28-31 (internal quotation marks omitted).) The emails were unencrypted "because the recipients of the original email were authorized company email addresses." (Id. ¶ 32.) Universal also alleges that Zhuang deleted the forwarded emails from the outbox of her Universal email account. (Id. ¶ 33.) On November 4, 2017, Ding and Universal Chief Executive Officer Saint Hung ("Hung") became aware of Zhuang's actions. (Id. ¶ 35.) Universal then placed Google Vault on Zhuang's email account to prevent her from deleting emails and documents and to retain previously deleted emails. (Id. ¶ 41.)

On November 6, 2017, Zhuang announced her formal resignation from Universal and met with Universal's Human Resources manager. (Id. ¶¶ 27, 49.) Universal alleges that the Human Resources manager walked through the Memorandum of Employment with Zhuang, reminding her of the confidentiality and nondisclosure clauses in the Memorandum of Employment she had previously signed. (Id. ¶ 50.) Zhuang also signed another document that states, "I understand and have had explained to me that pursuant to my employment Memorandum, I may not take any personnel, business information, business plans or models, or

clients from Universal Processing, LLC." (Id. ¶ 52, Ex. 3.) Universal alleges that Zhuang's login and access to "all confidential, work sensitive applications . . . with the exception of the CS Platform and WeChat," were revoked upon her resignation. (Id. ¶ 55.) Universal asserts that Zhuang has refused to release her administrator access to WeChat following her departure, despite Universal employees' attempts to engage with her and requests that she relinquish her access. (Id. ¶¶ 61, 63, 76-77.)

Zhuang took a new position at Argus following her resignation. (Id. ¶¶ 27.) Universal alleges that, after Zhuang joined Argus, Argus began a "targeted and concerted effort to usurp trade and business relationships cultivated by Universal." (Id. ¶¶ 87-89.)

On December 29, 2017, Universal filed its Complaint alleging that: by forwarding work emails containing Universal's confidential information to her personal email account prior to resigning, Zhuang breached contractual agreements and misappropriated trade secrets; by not relinquishing her access and credentials to Universal's applications, Zhuang committed conversion; and by joining Argus, Universal's direct competitor, and attempting to induce Universal's employees to join her and to poach Universal's clients, Zhuang and Argus intentionally interfered with contractual relations. Universal also asserts a cause of action for defamation for an online posting that included negative statements about Zhuang's employment experience at Universal. Finally, Universal pleads a separate cause of action against Defendants for declaratory relief.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pled that "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Universal asserts a claim for trade secret misappropriation under the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836. The DTSA defines a "trade secret" as, inter alia, any business information that "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) . . . derives independent economic value . . . from not being generally known . . . [or] readily ascertainable . . . [to] another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C.S. § 1839(3)(A)-(B) (LexisNexis 2018).

Defendants argue that Universal has failed to identify a trade secret in its Complaint. Universal contends that it has sufficiently pled its claim for trade secret misappropriation by identifying the Marketing Program financial model as the trade secret that has been misappropriated and alleging its value to Universal as the "guideline and core of Universal's 'micromarketing' and 'advanced marketing initiatives.'" (Compl. ¶¶ 28-30; Pl. Mem. in Opp'n, ECF No. 21, at 6.)

While it is not necessary to disclose every detail of an alleged trade secret in a complaint, the pleading standard set forth in Twombly and Iqbal requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret:

> Although there is no one-size-fits all definition to a trade secret [under the DTSA and New York trade secret misappropriation law] . . . courts generally consider the following factors to determine its contours:
>
> > (1) the extent to which the information is known outside of the business;
> >
> > (2) the extent to which it is known by employees and others involved in the business;
> >
> > (3) the extent of measures taken by the business to guard the secrecy of the information;
> >
> > (4) the value of the information to the business and its competitors;
> >
> > (5) the amount of effort or money expended by the business in developing the information; [and]
> >
> > (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

In re Document Techs. Litig., 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017) (quoting Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-cv-9687 (VEC), 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016)); see also Elsevier Inc. v. Doctor Evidence, LLC, No. 17 CV 5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (also applying this analysis to the determination of whether a trade secret exists under the DTSA and New York law).

Universal's pleading does not include factual allegations from which the Court can understand what the Marketing Program financial model is and the basis of Plaintiff's contention that it is a trade secret within the meaning of the DTSA. Universal alleges that it "takes reasonable steps to protect the secrecy of its trade secret information . . . which includes, but is not limited to, [the] use of passwords, security timeouts and confidentiality policies and non-disclosure covenants in employment agreements." (Compl. ¶ 100.) Universal concedes, however, that the files containing the Marketing Program financial model that Zhuang forwarded to her personal email were not encrypted. (Id. ¶ 32.) As Judge Forrest recently reasoned in

Elsevier Inc. v. Doctor Evidence, LLC, because trade secrets represent a subset of confidential information, taking steps to protect information through a confidentiality agreement alone does not suggest the existence of a trade secret. 2018 WL 557906, at *6. Additionally, Universal has not proffered facts concerning the value and competitive advantage that the Marketing Program financial model could provide to others, only alleging vaguely that it is "the guideline and core of Universal's 'micro-marketing' and 'advanced marketing initiatives.'" (Compl. ¶ 30.)[1] See Elsevier, 2018 WL 557906, at *6 n.2 (noting that the plaintiff's pleading "[did] not plausibly support the existence of a trade secret" where it did not address the value or secrecy of the alleged trade secret at any point.). Cf. Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15-CV-211 (LGS) (RLE), 2016 WL 5338550, at *6 (Sept. 23, 2016) (concluding that defendants sufficiently pled the existence of a trade secret when they alleged the value and competitive advantage provided by the information and detailed the reasonable measures they took to protect the alleged trade secrets, including making information accessible only through strictly controlled servers and imposing confidentiality provisions and limitations). Therefore, Universal has not sufficiently alleged the existence of a trade secret protectable by the Act. Universal's claim for trade secret misappropriation is accordingly dismissed.

---

[1] Universal's Complaint also lists general categories of information it alleges constitute trade secrets that Defendants have misappropriated. These include, "Universal's merchant and client contact applications; the CS Platform and WeChat client and merchant lists and contacts; marketing plans, marketing models, bidding strategies, and other unique customer information." (Compl. ¶ 103.) However, even when all inferences are drawn in Universal's favor in the context of a Rule 12(b)(6) motion, listing general categories of information is not sufficiently specific to plead the existence of a trade secret. See Elsevier, 2018 WL 557906, at *5-6. (explaining that, regardless of the plaintiff's security measures, simply pleading broad categories of information without reference to the other criteria of a trade secret is insufficient)

Universal's cause of action styled as one for declaratory relief does not provide a basis for the exercise of federal subject matter jurisdiction. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides a federal remedy, but does not provide any basis for a federal claim in cases in which there is no independent basis for exercising federal subject matter jurisdiction. Porat v. Lincoln Towers Community Ass'n, No. 4-CV-3199 (LAP), 2005 WL 646093, at *7 (S.D.N.Y. 2005). Because there is no other viable basis for federal jurisdiction or substantive relief under federal law pled in the Complaint, Universal's cause of action for declaratory relief is dismissed.

Having dismissed Plaintiff's federal trade secret misappropriation and declaratory judgment causes of action, the Court declines to exercise supplemental jurisdiction of Plaintiff's state law causes of action. 28 U.S.C. § 1367(c); See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted. This dismissal is without prejudice to the filing of a motion pursuant to Federal Rule of Civil Procedure 15(a) for leave to amend the Complaint.

Any such motion must be filed by **October 12, 2018** and must be accompanied by a memorandum of law and a copy of the proposed amended complaint that is blacklined to identify the proposed changes. Failure to make a timely motion for leave to amend, or to

demonstrate in such a motion that amendment would not be futile, will result in dismissal of this action with prejudice and without further advance notice.

This Memorandum Order resolves Docket Entry No. 17.

SO ORDERED.

Dated: New York, New York
September 28, 2018

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge